IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ACTIVE WIRELESS TECHNOLOGIES LLC, | § § § § | Case No. 2:23-cv-00261-JRG |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | ▇▇▇▇▇▇▇▇▇▇ |
| T-MOBILE USA, INC. and T-MOBILE US, INC., | § § § § | |
| Defendants, | § § § | |
| ERICSSON INC. and NOKIA OF AMERICA CORPORATION, | § § § § | |
| Intervenors. | § § | |

**PLAINTIFF ACTIVE WIRELESS TECHNOLOGIES LLC'S MOTION TO STRIKE OR EXCLUDE PORTIONS OF THE <u>REBUTTAL EXPERT REPORT OF LAUREN R. KINDLER</u>**

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION AND BACKGROUND ................................................................... 1

II. LEGAL STANDARD ................................................................................................... 1

III. ARGUMENT ................................................................................................................. 3

    A. Ms. Kindler Failed to Assume that Parties to the Hypothetical Negotiation Would Agree the Asserted Claims Are Infringed While Opining on Technical Benefits ........................................................................ 3

    B. Kindler's Opinions Regarding Certain Agreements Should Be Excluded ............ 5

        1. Unreliable Opinions Regarding the ▮▮▮▮ Agreement ........... 5

        2. Improper and Untimely Opinions Regarding the ▮▮▮▮ Ericsson Agreement ................................................................................ 7

        3. Unreliable Opinions Regarding the ▮▮▮ Nokia Agreement ............ 10

IV. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
  No. 2:22-CV-00343-JRG-RSP, 2024 WL 1287616 (E.D. Tex. Mar. 26, 2024) ..................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ............................................................................................................ 1

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .......................................................................................... 2

*Geomatrix Sys., LLC v. Eljen Corp.*,
  3-20-cv-01900 2024 WL 4753310 (D. CT Nov. 12, 2024) ................................................ 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................... 2

*Knight v. Kirby Inland Marine Inc.*,
  482 F.3d 347 (5th Cir. 2007) ............................................................................................. 1

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................................... 1

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ............................................................................................. 3

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ......................................................................................... 2

*M2M Sols. LLC v. Motorola Sols., Inc.*,
  No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2006) ............................................. 2

*Mathis v. Exxon Corp.*,
  302 F.3d 448 (5th Cir. 2002) ............................................................................................. 2

*Shockley v. Arcan, Inc.*,
  248 F.3d 1349 (Fed. Cir. 2001) ......................................................................................... 2

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ......................................................................................... 2

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
  992 F.3d 1366 (Fed. Cir. 2021) ..................................................................................... 7, 9

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ............................................................................................. 3

**Other Authorities**

Fed. R. Evid. 702............................................................................................................................ 1

4 *Weinstein's Federal Evidence* § 703.05 n.12 ............................................................................ 7

Plaintiff Active Wireless Technologies LLC ("AWT" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Motion to Strike or Exclude Portions of the Rebuttal Expert Report of Lauren R. Kindler.

## I. INTRODUCTION AND BACKGROUND

Defendants T-Mobile USA, Inc. and T-Mobile US, Inc., and Intervenors Ericsson, Inc. and Nokia of America Corporation, served the Rebuttal Expert Report of Lauren R. Kindler ("Kindler Report") regarding damages on November 22, 2024. However, certain opinions in Kindler's Report should be excluded or stricken as irrelevant, unreliable, or otherwise untimely disclosed. In particular: (1) Ms. Kindler fails to apply the *Georgia Pacific* hypothetical negotiation framework, because she does not assume the parties would agree that the Accused Products infringe when assessing technical benefit of the inventions; and (s) many of Ms. Kindler's opinions regarding allegedly comparable agreements are based on late-produced and inadmissible documents, are based on technical comparability opinions which should be struck, or otherwise fail to consider the most reliable evidence available to her. These portions of Ms. Kindler's report, and her corresponding opinions, should be stricken or excluded, as discussed in detail below.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 requires that expert testimony be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court recognized the court's "gatekeeping role" in "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 579-80; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-48 (1999). Moreover, "the expert's testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354-55 (5th Cir. 2007).

Permitting testimony from an expert who makes assumptions "without any basis in economic reality" is reversible error. *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1363 (Fed. Cir. 2001). The party offering expert testimony bears the burden of proving that it meets all the standards for admissibility. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002). If Defendant failed to "take into account the facts" of the case, its expert testimony "must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315-16 (Fed. Cir. 2011).

In patent cases, parties often use a *Georgia-Pacific* hypothetical negotiation analysis. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). "The . . . hypothetical negotiation or the 'willing licensor-willing licensee' approach, attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed." *Id.* at 1325. To be considered in a Georgia-Pacific analysis, a license must be economically comparable to the hypothetical negotiation license and cover comparable technology, with analysis to account for any differences. *E.g.*, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) (holding that, when relying on past licenses, an expert "must account for differences in the technologies and economic circumstances of the contracting parties"). "The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *M2M Sols. LLC v. Motorola Sols., Inc.*, No. 12-33-RGA, 2016 WL 767900, at *8 (D. Del. Feb. 25, 2006).

"The hypothetical negotiation [] assumes that the asserted patent claims are valid and infringed." *Lucent Techs.*, 580 F.3d at 1325.

2

III.  **ARGUMENT**

  A.  **Ms. Kindler Failed to Assume that Parties to the Hypothetical Negotiation Would Agree the Asserted Claims Are Infringed While Opining on Technical Benefits**

Under the hypothetical negotiation framework, the parties are assumed to agree that the accused product at issue is infringed. *See Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (analyzing hypothetical negotiation framework by reference to a reasonable royalty to a license for accused devices); *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) (determining hypothetical negotiation date "with respect to those accused laptop computers"). But while Ms. Kindler has applied that assumption with respect to the overall identification of Accused Products, she failed to do so while critiquing Kennedy's opinions on the technical benefits of the asserted '443 and '557 Patent. *See* Ex. 1, ¶¶ 184-189. Instead, she extensively relies on Dr. Fuja's non-infringement opinions in her critique of Kennedy's analysis based on technical benefits. These opinions are unreliable for failure to apply *Georgia Pacific*, and further, would be impossible to cure through cross-examination since the jury would not understand the legal significance of this oversight.

The substance of Ms. Kindler's opinions minimizing the technical benefit of the '443 Patent are improperly premised on Dr. Fuja's non-infringement arguments that code block groups must include more than one code block. In other words, she evaluated the technical benefit of the Asserted Patents based on Dr. Fuja's non-infringement positions, rather than assuming the Accused Products infringed, as required under the *Georgia Pacific* hypothetical negotiation framework. At ¶¶ 131.a. and 184-189, Ms. Kindler critiques Kennedy's technical benefit opinions regarding the '443 Patent, but her positions rely on Dr. Fuja's non-infringement positions regarding code blocks. For example, Ms. Kindler states "I understand from Dr. Fuja that at least one aspect of Mr. Bates's infringement analysis, if not the only basis, appears to focus on a

3

situation in which a transport block consists of a single code block group. If that is the case, I understand from Dr. Fuja that there would be no benefit to practicing the '443 Patent, even under Mr. Bates's model, because the same number of acknowledgments would be sent in both cases." Ex. 1, ¶ 188. Ms. Kindler's sole argument assumes that AWT's infringement position regarding code blocks is wrong, and that the actual benefit would be smaller if a transport block must include more than one code block. *Id.* At ¶ 186, Ms. Kindler continues: "I further understand from Dr. Fuja that the analysis Mr. Bates relies on does not even relate to code block groups, but rather is based on code blocks." She relies on this dispute over the technical scope of the "code block group" claim term, based on which Dr. Fuja argues Mr. Bates' analysis of technical benefits is incorrect, in a further attempt to minimize the technical benefit of the '443 Patent. *Id.*; *see also* Ex. 2 ¶ 750 ("I agree with Rouwet that a code block group consists of multiple CBs, and cannot be a single code block as Mr. Bates' allegations imply."); *id.* ¶ 753 ("Because none of the analysis that Mr. Bates points to relates to code block *groups*, as opposed to code blocks, none of his opinions are tied to the claimed invention."); *id.* ¶ 767 ("So the figure above and Mr. Bates' analysis of it have nothing to do with code block *groups*, which are the focus of the '443 patent.")

At ¶ 131.b, Ms. Kindler similarly relies on Dr. Fuja's non-infringement positions with respect for the '557 Patent, stating "[m]oreover, I further understand from Dr. Fuja that the benefits claimed by Mr. Bates and Mr. Kennedy are alleged to relate to the use of "on-demand SI," whereas the claims of the '557 Patent are directed to broadcasting of SI messages, which I understand even Mr. Bates acknowledges were part of LTE systems." These arguments reflect Dr. Fuja's position, contrary to the Court's claim construction, that Claim 9 of the '557 Patent requires an on-demand re-transmission of SIB1 information directly in response to user equipment failing on an SI message acquisition process (as opposed to a base station *configured to* re-transmit, including on

4

a periodic broadcast basis, upon the UE failing on an SI message acquisition process). *See, e.g.*, Ex. 2 ¶ 177 ("SIB1 does not have such a value tag and thus does not fall into the category of 'these SIBs need to be re-acquired'"); *Compare* Dkt. 89, Claim Construction Order, 10-11 ("the failure to acquire the SI message is not a requirement of the claims."). Indeed, Ms. Kindler conceded that this position relies on Dr. Fuja's non-infringement arguments: "Do you know, one way or the other, how that is related to [Dr. Fuja's] noninfringement positions? A. *I mean, it sounds like it would be related to his noninfringement positions*, but I don't have an understanding beyond that." Ex. 3 at 19:5-10 (emphasis added).

Ms. Kindler's opinions minimizing the technical benefits of the '443 and '557 Patents thus reflect a failure to follow the framework of the *GP* hypothetical negotiation, and should be excluded as unreliable and irrelevant.

### B. Kindler's Opinions Regarding Certain Agreements Should Be Excluded

Ms. Kindler opines that the appropriate royalty in this action should be a range between her adjusted values paid in five agreements, allegedly comparable to the hypothetical negotiation. Her opinions regarding four of these agreements should be excluded as unreliable, or otherwise stricken.

#### 1. Unreliable Opinions Regarding the ▮▮▮▮ Agreement

The ▮▮▮▮ Agreement is a redacted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, produced by Nokia in this action. Ex. 6. Neither Ms. Kindler nor Nokia know the license fee of the ▮▮▮▮ =cause the redacted version given to Nokia by ▮ redacts that information, as well as the identity of other covered parties. *Id.* at 4, Ex. A, and Ex. C (brackets marking redacted areas). There are several flaws making Ms. Kindler's analysis irrelevant, unreliable, and otherwise improper.

5

First, because Ms. Kindler does not know the amount of the actual license fee paid by ▮▮, she instead relies on the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and scales that amount to ▮▮ based on third-party metrics for Ericsson's North American (**not** U.S.) 5G market share relative to Nokia's. Ex. 1, ¶ 107. But Ms. Kindler disregards that her other two clients in this action, Ericsson and T-Mobile, **both contributed to the** ▮▮▮▮▮ **Agreement**, among other parties (and possibly ▮▮ itself). Ex. 7, at 112:10-113:5 (Nokia 30(b)(6) licensing witness testifying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see also id.* at 71:22-72:3, 113:6-115:6 (emphasis added). Ms. Kindler's decision to estimate a value to Ericsson, instead of asking her client the actual amount they contributed, **while ignoring Defendant T-Mobile and other parties' contributions**, is inexplicable. This amounts to a decision not to use the most reliable evidence available to her. Moreover, even *if* the amount that Ericsson paid was proportionate to Nokia (and setting aside use of market share data including Canada and Mexico), her analysis is not relevant or reliable because she ignores the actual "rates paid by the licensee" (▮▮) as required by *GP* factor 2, and disregards Defendant T-Mobile's contribution entirely. In sum, Ms. Kindler proposed to offer the jury guesswork based solely on Nokia's contribution to ▮▮, likely to confuse them as to the amount paid by the actual *GP* factor 2 licensee (▮▮). These opinions are not reliable, nor helpful to the jury.

Second, neither T-Mobile nor Ericsson produced their documentation related to the ▮▮▮▮▮ Agreement. This either reflects a determination by Defendant T-Mobile and Intervenor Ericsson that the ▮▮▮▮▮ Agreement is irrelevant or represents a failure to comply with their discovery obligations. In either case, AWT was deprived of the opportunity to examine

6

T-Mobile and Ericsson's witnesses regarding their contribution to test Ms. Kindler's conclusions. Both are fatal to her use of the Agreement. At best, Ms. Kindler's position is contrary to two out of three parties' positions that their contribution to the ▬▬▬ Agreement did not need to be produced. This problem is compounded because it implicates discovery issues, and therefore cannot be effectively cured through cross-examination before the jury. Her opinions should therefore further be excluded on this basis as contrary to the discovery positions of Ericsson and T-Mobile.

Third, Ms. Kindler cannot offer any competent opinions on the ▬▬▬ Agreement because the agreement itself is inadmissible hearsay. *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1374–76 (Fed. Cir. 2021) ("As to the first question, 'Rule 703 does not make admissible otherwise inadmissible evidence.' 4 *Weinstein's Federal Evidence* § 703.05 n.12. That is because 'Rule 703 is not, itself, an exception to or exclusion from the hearsay rule or any other evidence rule that makes the underlying information inadmissible.' *Id.* § 703.05.)" The Agreement is between ▬▬▬, and amounts to out-of-court statements of those parties. Nokia is not a party, nor is the agreement a Nokia business record. Indeed, Nokia does not even possess an unredacted copy of the Agreement. No hearsay exception applies, nor did Nokia even attempt to obtain business records or authentication declarations from either ▬▬▬. It is impossible for Ms. Kindler to use the Agreement as an input to her royalty analysis when it cannot come into evidence. Her opinions should further be excluded on this basis.

   2.   **Improper and Untimely Opinions Regarding the ▬▬▬ Ericsson Agreement**

Ms. Kindler relies on adjustments to the fee paid in a patent license between ▬▬▬ and Ericsson as another input to her royalty analysis. These license fees are irrelevant, unreliable, and improper for several reasons.

7

First, Ms. Kindler's opinions rely extensively on a purported ▮▮▮▮ meeting presentation given to Ericsson which was not produced until November 20, 2024, long after the October 22, 2024 close of fact discovery, and October 25, 2024 deadline for Plaintiff's damages report. The presentation is integral to all of her comparability opinions on the ▮▮▮▮ agreement. For example, because the ▮▮▮▮ agreement itself does not identify any specific licensed patents, Kindler relies on this presentation for the size and scope of ▮▮▮▮ portfolio and the wireless standards that they allegedly cover (*e.g.*, 3G, 4G, 5G, and 6G). Ex. 1, ¶¶ 92-93. Ms. Kindler's understanding of technical comparability from Dr. Fuja, who also relies on the patents identified in the presentation. *Id.* at ¶ 96.d. and fn 324. She also relies on statements in this document for the "strength" of ▮▮▮▮ portfolio, and its "leadership in cellular standards." *Id.*, ¶ 96.f. Ms. Kindler further relies on, and refers back to, her use of the presentation in her quantitative analysis of the ▮▮▮▮ Agreement. *Id.*, ¶ 97. The presentation is marked RESTRICTED – ATTORNEYS' EYES ONLY, and was apparently in Ericsson's possession throughout fact discovery. Yet Ericsson did not produce the presentation or reveal its existence despite AWT's requests for all such documentation related to allegedly comparable licenses.[1] AWT was therefore deprived of the opportunity to question Ericsson's 30(b)(6) witness regarding the document, or to provide the document to its own damages expert to consider. Kindler's opinions regarding the ▮▮▮▮ Agreement should therefore be stricken as relying on the untimely produced document.

---

[1] For example, in addition to Ericsson's obligations under the Discovery Order, AWT's individual Rog. No. 2 sought any agreements that "You contend are comparable" and Rog. No. 6 sought "documents referring or relating to any comparable patent licenses and supporting or refuting the reasonable royalty rate You contend would be FRAND" Ex. 8, Ericsson's Third Supp. Resp. to First Set of Interrogatories (Nos. 1-8) and Ex. 9, Nokia's Third Supp. Resp. to First Set of Interrogatories (Nos. 1-8).

**Second**, in addition to being untimely produced, the ▇▇▇ presentation is inadmissible hearsay. Kindler cannot rely on such a hearsay document to identify the patents allegedly covered by the separate ▇▇▇ Agreement, particularly when neither the presentation nor the patents listed therein are identified in the four corners of the Agreement. Nor can Kindler rely on the presentation for a total number of those patents or their alleged technology areas. While an expert may rely on inadmissible data to form an opinion "if experts in the particular field would reasonably rely on that kind of data in forming an opinion on the subject . . . it is plain that an experts reliance on such data 'does not make admissible otherwise inadmissible evidence.'" *Geomatrix Sys., LLC v. Eljen Corp.*, 3-20-cv-01900 2024 WL 4753310, at *16 (D. CT Nov. 12, 2024) (citing *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1374 (Fed. Cir. 2021)). Indeed, this Court has excluded similar opinions based on hearsay materials regarding "large[] patent portfolio[s] . . . untethered to the patents or technology at issue in the case." *Correct Transmission, LLC v. Nokia of Am. Corp.,* No. 2:22-CV-00343-JRG-RSP, 2024 WL 1287616, at *2 (E.D. Tex. Mar. 26, 2024) ("The Networks[3] damages model is inadmissible hearsay. While experts may rely on hearsay, that permission does not extend here, where the prejudicial effect outweighs any slight probative value. The damages model is clearly the product of some other third-party who performed some unknown analysis with unknown expertise to develop those opinions. Permitting Mr. Dell to reference and rely upon such opinions is not helpful to the jury.") Here, Ms. Kindler's expertise does not even bear on her use of information regarding the size of ▇▇▇ portfolio. She is proffered as an expert in economics, not the contents of ▇▇▇ patent portfolio and, in any case, no expert would reasonably rely on a hearsay slide deck to identify the patents allegedly covered by a license contract. Her opinions regarding the ▇▇▇ Agreement should further be excluded on this basis.

9

Finally, Ms. Kindler relies on the opinions of Defendants' technical expert, Dr. Fuja, for the premise that the ▮▮▮▮▮ Agreement is technically comparable to the Asserted Patents. As discussed in the parallel motion to exclude, those positions should be excluded. Her analysis assumes technical comparability as a prerequisite based on Dr. Fuja's opinion and should be excluded on the same grounds.

### 3. Unreliable Opinions Regarding the ▮▮▮▮▮-Nokia Agreement

Ms. Kindler relies on adjustments to the fee paid in a patent license between ▮▮▮▮▮ and Nokia as another input in her royalty analysis. Ex. 1, ¶¶ 99-103. She relies on Dr. Fuja's opinions for the premise that the ▮▮▮▮▮ Agreement is technically comparable to the Asserted Patents. As discussed in the parallel motion to exclude, Dr. Fuja's technical comparability opinions should be excluded. Kindler's analysis assumes technical comparability as a prerequisite based on Dr. Fuja's opinions and should be excluded on the same grounds.

## IV. CONCLUSION

For the foregoing reasons, AWT respectfully requests that the Court grant the Motion.

Dated: December 10, 2024                Respectfully submitted,

                                                                 */s/ Vincent J. Rubino, III*
                                                                 Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

10

Charles Everingham IV
Texas Bar No. 00787447
Email: ce@millerfairhenry.com
Andrea L. Fair
Texas Bar No. 24078488
Email: andrea@millerfairhenry.com
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*ATTORNEYS FOR PLAINTIFF*
*ACTIVE WIRELESS TECHNOLOGIES LLC*



### CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for AWT (Julian Pymento and Jacob Ostling), met and conferred with counsel for T-Mobile, Nokia, and Ericsson (Matthew Yungwirth, John Gibson, and Kevin Anderson) via Microsoft Teams videoconference on December 10, 2024 in compliance with L.R. CV-7(h) regarding the issues presented in the foregoing Motion. The Parties were unable to resolve the issues and are at an impasse regarding the relief sought and Court assistance is thus necessary.

/s/ Vincent J. Rubino, III
Vincent J. Rubino, III

### CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2024, a true and correct copy of the above and foregoing document has been served by email on all counsel of record.

/s/ Vincent J. Rubino, III
Vincent J. Rubino, III